UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT SELHORST, | No. C-11-3266 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| ALWARD FISHERIES, LLC, *et al.*, | **(Docket Nos. 7, 18)** |
| Defendants. | |
| _____/ | |

Defendants' motion to dismiss Plaintiff's complaint for lack of personal jurisdiction and Plaintiff's motion to strike came on for hearing before the Court on September 30, 2011. Docket Nos. 7, 18. For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's complaint. This moots Plaintiff's motion to strike.

## I.   FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Robert Selhorst filed this suit against Defendants Matthew Alward and Alward Fisheries for injuries suffered when working on Defendants' vessel in 2009. Compl. ¶¶ 13, 14. Plaintiff resided in Oakland, California when Plaintiff alleges that he was "personally recruited" to work as a skiffman on Defendants' vessel by Tyson Alward, Matthew Alward's younger brother, in 2007. Docket No. 16 ¶ 4 ("Selhorst Decl."). After this personal visit, Matthew Alward contacted Plaintiff by telephone, at which point they reviewed the terms and conditions of employment and Plaintiff agreed to accept employment with Defendants for the 2007 summer season. Selhorst Decl. ¶ 5.

1  Plaintiff later worked for Defendants for the 2008 and 2009 summer seasons. Docket No. 22
2  ¶ 7 ("Second Alward Decl."). During the 2009 summer season, Plaintiff suffered severe and
3  permanent injuries to his left hand and left eye. Compl. ¶¶ 14, 16. Immediate care for Plaintiff's
4  injuries took place in Alaska, but since then Plaintiff has returned to California where Plaintiff
5  continues to receive treatment. Selhorst Decl. ¶ 10. Based on these injuries, Plaintiff asserted three
6  claims based on Jones Act negligence, breach of the warranty of seaworthiness, and for maintenance
7  and cure. Compl. ¶¶ 11, 20, 25.

8  Defendants then filed a motion to dismiss Plaintiff's case based on lack of personal
9  jurisdiction. Defendants allege that minimal contacts with California do not exist, as Defendants are
10 based in Alaska. Docket No. 9 ¶ 9 ("First Alward Decl."). Defendants do not have offices or bank
11 accounts in California, do not conduct business in California, own no real estate in California, and
12 do not possess any California business licenses. First Alward Decl. ¶¶ 5, 7. Defendants' vessel
13 fishes solely in Alaska and delivers its catch in Alaska, and does not commercially fish in California,
14 have permits to fish in California, or deliver fish to California. First Alward Decl. ¶ 4. The sole
15 contact between Defendants and California is Tyson Alward's recruitment of Plaintiff in California.[1]

## II. DISCUSSION

A. Standard of Review

A court's exercise of personal jurisdiction over a non-resident defendant must satisfy both the applicable state long arm statute and constitutional principles of due process. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.3d 1280, 1286 (9th Cir. 1977). As the California long-arm statute is coextensive with federal due process, "the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 801.

Due process requires that a defendant have "minimum contacts" with the forum state "such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial

---

[1] Defendants dispute whether Tyson Alward's recruitment of Plaintiff actually occurred. In the absence of an evidentiary hearing, the Court must treat uncontroverted allegations in Plaintiff's complaint as true, and resolve disputed statements of facts in Plaintiff's favor. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Latshaw v. Johnson*, 167 F.3d 208, 213 (5th Cir. 1999) (rejecting the defendant's version of events because "at . . . this stage of no-evidentiary-hearing situation, we are constrained to accept [the plaintiff's] allegation[s].").

justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Depending on how numerous or substantial these minimum contacts are, a court may have either general or specific jurisdiction over a non-resident defendant. *Sher v. Johnson*, 911 F.3d 1357, 1361 (9th Cir. 1990).

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *Id.* However, in the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Data Disc, Inc.*, 557 F.2d at 1285.

B.  General Jurisdiction

The standard to establish general jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801. Thus, "[f]or general jurisdiction to exist, a defendant must engage in continuous and systematic general business contacts that approximate physical presence in the forum state." *Id.*

In determining whether a non-resident corporation has sufficient contacts to subject it to general jurisdiction in the forum state, the courts have required substantial activities in that state. In *Perkins v. Benguet Consolidated Mining Co.*, the Supreme Court found general jurisdiction because a non-resident mining company's president – who was also the general manager and principal stockholder – ran the corporate office from the forum state. 342 U.S. 437, 447-48 (1952). Although the company performed no mining activities in the forum state, the president maintained the company's office files, carried on business correspondence, drew and distributed salary checks, used and maintained active bank accounts, acted as a transfer agent for company stock, held directors' meetings, supervised company policies and activities, and generally performed his duties as president and general manager from the forum state. *Id.* at 448.

The Ninth Circuit has refused to find general jurisdiction for contacts that are not equally substantial, continuous, or systematic as those found in *Perkins*. *See, e.g.*, *Schwarzenegger*, 374 F.3d at 801 (no general jurisdiction where non-resident company regularly purchased California-imported automobiles, retained services of California businesses, and maintained a website accessible to California residents). In finding no general jurisdiction in *Mavrix Photo*, the Ninth

1  Circuit emphasized that the defendant had "no offices or staff in California, is not registered to do
2  business in the state, has no registered agent for service of process, and pays no state taxes." *Mavrix*
3  *Photo, Inc. v. Brand Techs, Inc.*, No. 09-56134, 2011 U.S. App. LEXIS 16326, at *13 (9th Cir. Aug.
4  8, 2011).  Without such contacts, the fact that the defendant maintained business relationships with
5  California businesses and allowed third parties to advertise California-based job and vacation
6  opportunities on its website was insufficient to support general jurisdiction over a non-California
7  business.  *Id.*

8  Courts have applied the same rigor in determining whether general jurisdiction exists in a
9  Jones Act case.  In *Leebolt v. Hornbeck*, the court explicitly rejected the plaintiff's suggestion that
10 the court take a more "relaxed" approach to determining whether general jurisdiction existed in
11 litigating a Jones Act claim, and found no general jurisdiction where the defendant's only contact
12 was one vessel docked in California for four days.  C10-cv-0687 JAH, 2010 U.S. Dist. 120211, at
13 *10 (S.D. Cal. Nov. 12, 2010).  The defendant lacked any other contacts with California, as the
14 defendant did not have any "offices, leases, subsidiaries, tax payments, real property, advertising,
15 selling or providing products, registration, or agents for service of process." *Id.* at *6-7; *compare*
16 *Mateer v. Interocean Am. Shipping Corp.*, C06-01642 WHA, 2006 U.S. Dist. LEXIS 22502, at *13
17 (N.D. Cal. Apr. 17, 2006) (finding general jurisdiction where defendants registered to conduct
18 business in California, had a California agent for service of process, operated two ships that never
19 left San Francisco, leased an office in Alameda, made local payroll tax deductions, and earned six
20 percent of its 2004 revenue in California).

21 Plaintiff likewise fails to establish that Defendant had any systematic relationship with
22 California that would support general jurisdiction.  Plaintiff argues that Defendant's recruitment of
23 Plaintiff in 2007, 2008, and 2009 is a "substantial" activity that subjects Defendants to general
24 jurisdiction in California because recruitment is integral to Defendant's business.  However, other
25 than the recruitment of Plaintiff from California, Plaintiff cannot point to any other contacts between
26 Defendants and California.  Plaintiff concedes that Defendant conducts no fishing in California, and
27 does not identify any other business relationships Defendant has with California.  Like the
28 defendants in *Mavrix Photo and Leebolt*, Defendants do not have any offices or bank accounts in

4

California, own any California business licenses, pay California taxes, own California real estate, or have a registered agent for service of process in California. First Alward Decl. ¶¶ 4, 5, 7. Accordingly, the Court finds that Plaintiff has not sustained his burden of making a prima facie showing that Defendants are subject to general jurisdiction in California.

C.      Specific Personal Jurisdiction

Plaintiff also contends that Defendant has sufficient "minimum contacts" with California to establish specific personal jurisdiction. The Ninth Circuit has established a three-prong test for analyzing specific personal jurisdiction. First, the non-resident defendant must either purposefully direct his activities towards the forum state, or purposefully avail himself of the privilege of conducting business in the forum state, thereby invoking the benefits and protections of its laws. *Schwarzenegger*, 374 F.3d at 802. Second, the claim must arise out of or relate to the defendant's forum-related activities. *Id.* Third, the exercise of jurisdiction must be reasonable, comporting with fair play and substantial justice. *Id.* When analyzing the first prong in claims based on Jones Act negligence, unseaworthiness, and maintenance and cure, courts have used a purposeful availment analysis. *See, e.g.*, *Estigoy v. OSG Car Carriers, Inc.*, 33 Fed. Appx. 844, 844-45 (9th Cir. 2002) (unpublished decision); *Ortiz v. Wilmington Trust Co.*, C91-00573 DAE, 1992 U.S. Dist. LEXIS 21362, at *2, 8 (D. Haw. June 2, 1992); *Stewart v. Luedtke Eng'g Co.*, C05-3467 SBA, 2006 U.S. Dist. LEXIS 17130, at *6, 9 (N.D. Cal. Feb. 10, 2006).

Plaintiff contends that when a non-resident defendant aggressively pursues a business relationship with a local resident, the non-resident 'purposefully avails' himself of the benefits and protections of local laws and is thus subject to personal jurisdiction in the forum state. However, in *Burger King*, the Supreme Court found that an individual's contract with an out-of-state party cannot alone automatically establish sufficient minimum contacts to support jurisdiction. *Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985). Because the contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction[, i]t is these factors–prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing–that

must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479.

Relying on *Burger King*, the Ninth Circuit has emphasized the importance of the future consequences of a contract. In *Roth v. Marqez*, the Ninth Circuit found that the parties' contract supported jurisdiction where the "contract's subject would have continuing and extensive involvement with the forum." 942 F.2d 617, 622 (9th Cir. 1991). Despite the Court's finding that the defendant's minimal physical presence and the plaintiffs solicitation of the contract weighed against finding jurisdiction, the Court held that there was sufficient purposeful availment because "most of the future of the contract would have centered on the forum." *Id.* Thus, the contract was not "a one-shot deal that was merely negotiated and signed by one party in the forum," but dependent upon further activities in the forum state. *Id.*; *see also Sher*, 911 F.2d at 1362 (finding that phone calls, letters, and visits to California did not by themselves establish purposeful availment because it was "not the deliberate creation of a 'substantial connection' with California, nor is it the promotion of business within California.").

In *Azzarello v. Navagility, LLC*, the Court found that a non-resident defendant who knowingly reached out to a California investor did not purposefully avail itself of California. No. C-08-2371 MMC, 2008 U.S. Dist. LEXIS 117119, at *13 (N.D. Cal. Oct. 16, 2008). The case was distinguishable from *Burger King* and *Roth* because "the contract at issue envisioned no ongoing relationship or consequences in California." *Id.* at *11-12. Instead, the contract concerned a loan that contemplated no future actions by either party after the repayment date. The plaintiff's California location was irrelevant to the terms or execution of the agreement, and other than the mailing of the plaintiff's check, no performance in the forum state was required. *Id.* at *12.

Likewise, in *Sarkis v. Lajcak*, the Court found that defendants lacked sufficient contacts with California even where they advertised a position in a magazine with circulation in California, contacted the plaintiff in California, interviewed the plaintiff over the telephone, paid for the plaintiff's travel from California, and sent payments to the plaintiff's California account. C-08-1911 RMW, 2009 U.S. Dist. LEXIS 95971, at *7 (N.D. Cal. Oct. 2009). The Court found that "the fact that there were telephone calls and e-mail communications with plaintiff in California in the course

6

of the negotiations leading to the formation of the initial employment contract is not sufficient." *Id.* at \*9 (citing *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985)). These events were alone insufficient to establish purposeful availment when essentially the entire contract was performed outside of California. *Id.* at \*9-10 (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (finding that where the material performance occurred outside of the forum state, "the exchange of communications between Texas and Oklahoma in the course of developing and carrying out the contract was in itself also insufficient to constitute purposeful availment of the benefits and protections of Texas law. These communications to Texas rested on nothing but the mere fortuity that [the plaintiff] happens to be a resident of the forum.").

Courts outside of the Ninth Circuit have come to similar conclusions in determining whether there was jurisdiction over a defendant in cases based on the Jones Act. In *Cleveland v. Accumarine & Transportation, LP*, the non-resident defendant had offered the plaintiff employment over a telephone call while the plaintiff resided in the forum state. 6:10-cv-01334-JMC, 2011 U.S. Dist. LEXIS 27682, at \*9 (D.S.C. Mar. 16, 2011). The plaintiff was injured while working on the defendant's vessel outside of the forum state. The plaintiff then returned to the forum state for continued treatment, which the defendant paid for. *Id.* at \*12. Given that the defendant lacked any other contact with the state, including the fact that the "[d]efendant did not enter into any contract to be performed in whole or in part by either party in the [forum] state," the Court found that the telephone call was insufficient to constitute minimum contacts with the forum state. *Id.* at \*11-12.

In support of his proposition that an out-of-state defendant is subject to jurisdiction whenever the defendant pursues a business relationship with a resident of the forum state, Plaintiff cites cases from the Fifth and Eighth Circuits.[2] However, Plaintiff's cases do not suggest that the creation of the business relationship is itself sufficient to constitute minimum contacts. In both cases, the contracts contemplated an on-going relationship between the non-resident parties and the forum state.

---

[2] Plaintiff also cites *Utoafili v. Trident*, Case No. 09-2575 SC, 2009 U.S. Dist. LEXIS 110644 (N.D. Cal. Nov. 30, 2009), in his complaint and during the hearing on this matter. The Court finds that *Utoafili* is inapplicable in this case, as *Utoafili* only discussed whether venue was proper rather than whether personal jurisdiction over the defendant existed.

In *Latshaw v. Johnson*, the Fifth Circuit found personal jurisdiction where the defendant and the plaintiff engaged in a nearly decade-long joint venture agreement for the joint purchase and sale of oil drilling equipment from the forum state. 167 F.3d at 209. The Court specifically distinguished a contract that would be performed outside of the forum state, focusing instead on the fact that the defendant had entered into an ongoing relationship with a resident of the forum state that required the defendant to make multiple trips and phone calls to the forum state in furtherance of that business relationship. *Id.* at 213.

Likewise, in *St. Jude Medical, Inc. v. Lifecare International, Inc.*, the Eighth Circuit looked not only at the defendant's phone calls and writings to the forum state in negotiating a contract, but the fact that the contract "contemplated an ongoing relationship requiring regular communications between Lifecare in California and St. Jude in Minnesota." 250 F.3d 587, 592 (8th Cir. 2001). Not only did the contract require the defendant to assist personnel in Minnesota and distribute products manufactured in Minnesota, but the defendants continued to visit Minnesota in order to solicit more business from the plaintiff. *Id.* at 592-93. The Eighth Circuit, which held that "[w]hile no one contact between [the defendants] and Minnesota may have been enough to satisfy due process, taken in the aggregate, they are sufficient to subject [the defendants] to jurisdiction in Minnesota." *Id.* at 593. *See also Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1433 (8th Cir. 1995) (finding that the non-resident defendant's mail and telephone contacts in pursuit of a business relationship with a citizen of the forum state was alone "insufficient to confer personal jurisdiction, but remain a consideration in determining whether the defendant purposely availed himself of the privilege of doing business in Minnesota.").

In the instant case, Defendants' alleged contacts with California are limited to Tyson Alward's recruitment visit, phone calls by Tyson Alward to Plaintiff, and a single phone call between Defendant Matthew Alward and Plaintiff to negotiate the contract in 2007. Selhorst Decl. ¶ 5. Unlike the contracts in *Burger King*, *Roth*, *Latshaw*, and *St. Jude*, where performance required actions in the forum state, the contract here concerned fishing activities in Alaska only. Second Alward Decl. ¶ 11. No part of the contract was performed in California, and any payments sent to California would be dependent on Plaintiff's work in Alaska. Plaintiff's injury did not arise in

California, but while Plaintiff was performing the contract in Alaska. Compl. ¶ 14, 16. Apart from the fact that Defendants recruited Plaintiff while Plaintiff resided in California, Defendants lack any other contacts with the state. Defendants' singular act of recruiting Plaintiff from California is by itself insufficient to satisfy minimum contacts when the contemplated future consequences of the employment contract were to take place entirely in Alaska. *Compare with Sarkis*, 2009 U.S. Dist. LEXIS 95971, at *9.[3] Accordingly, the Court finds that Plaintiff has not sustained his burden of showing that Defendant purposefully availed themselves of conducting business in California.

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion to dismiss for lack of personal jurisdiction. This moots Plaintiff's motion to strike.

This order disposes of Docket Nos. 7 and 18.

IT IS SO ORDERED.

Date: October 19, 2011

_____
HON. EDWARD M. CHEN
United States District Judge

---

[3] Furthermore, the alleged recruitment took place in 2007, two fishing seasons before the injury to Plaintiff. There is thus substantial doubt whether the injury in 2009 arose out of Defendants' isolated contact with California in 2007. *See Ziegler v. Indian River Cnty.*, 64 F.3d 470, 474 (9th Cir. 1995).